39

RECEIPT NUMBER

200—523264

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TROY SKILES, on behalf of himself and all others
similarly situated

                         Plaintiff,

       vs.

VISTEON CORP., PETER J. PESTILLO,
MICHAEL F. JOHNSTON, ORGANIZATION
AND COMPENSATION COMMITTEE, STEVEN
K. HAMP, ROBERT H. JENKINS, CHARLES L.
SCHAFFER, WILLIAM H. GRAY III, KARL
KRAPEK, PATRICIA L. HIGGINS, JAMES D.
THORNTON, VISTEON INVESTMENT PLAN
ADMINISTRATIVE COMMITTEE, ROBERT H.
MARCIN, BARBRA QUILTY, and UNKNOWN
DEFENDANTS 1-100,
Defendants.

```
JUDGE : Cohn, Avern
DECK  : S. Division Civil Deck
DATE  : 03/28/2005 @ 16:21:03
CASE NUMBER : 2:05CV71205
CMP TROY SKILES VS VISTEON CORP
ET AL (LE)
```

MAGISTRATE JUDGE DONALD A. SCHEER

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF
## THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

1.    Plaintiff Troy Skiles ("Plaintiff"), a participant in the Visteon Investment Plan[1] (the

"Plan"), for relief on behalf of the Plan, alleges as follows:

### INTRODUCTION

2.    This is a class action brought pursuant to ' 502 of the Employee Retirement Income

Security Act ("ERISA"), 29 U.S.C. ' 1132, against Plan fiduciaries, including Visteon Corp.

("Visteon" or the "Company").

---

[1] Plaintiff also brings this suit on behalf of the Visteon Savings Plan for Hourly Employees ("Hourly Plan"), and its participants and beneficiaries. According to the Plan's Form 11-K filed with the Securities and Exchange Commission for year ending December 30, 2003 ("2003 Form 11-K"), the assets of both the Plan and Hourly Plan are held by the Visteon Corporation Master Trust ("Master Trust").

3.      Plaintiff Skiles was an employee of Visteon and a participant in the Plan during the Class Period.  His retirement investment portfolio included Visteon common stock ("Visteon Stock" or "Company Stock").

4.      Plaintiff alleges that Defendants, as fiduciaries of the Plan, breached their duties to him and to the other participants and beneficiaries of the Plan during the Class Period in violation of ERISA, particularly with regard to the Plan's holdings of Visteon Stock.

5.      During the Class Period, Defendants knew or should have known that Visteon's Stock was an imprudent investment alternative for the Plan.  Due to the Company's declining business prospects and other business improprieties.

6.      Defendants are liable under ERISA to restore losses sustained by the Plan, and concomitantly the Plan participants, as a result of their breaches of their fiduciary obligations.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. ' 1331 and ERISA ' 502(e)(1), 29 U.S.C. ' 1132(e)(1).

8.      Venue is proper in this district pursuant to ERISA ' 502(e)(2), 29 U.S.C. ' 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## THE PLAN

### A.      *Nature of the Plan*

9.      The Visteon Investment Plan is an "employee pension benefit plan" as defined by ' 3(2)(A) of ERISA, 29 U.S.C. ' 1002(2)(A).

10.    The Plan is a legal entity that can sue or be sued.  ERISA ' 502(d)(1), 29 U.S.C. '

1132(d)(1).  However, in a breach of fiduciary duty action such as this, the Plan is neither a Plaintiff

nor a Defendant.  Rather, pursuant to ERISA ' 409, 29 U.S.C. ' 1109, and the law interpreting it, the

relief requested in this action is for the benefit of the Plan.  Stated differently, in this action, Plaintiff,

who is described above, seeks relief on a "plan wide" basis.

B.    The Structure of the Plan11.  According to Visteon's Form 11-K filed with the SEC

on June 25, 2004 for the fiscal year ended December 30, 2003 ("2003 11-K"), the Plan is a defined

contribution plan "established to encourage and facilitate systematic savings and investment" by

salaried employees of Visteon, who meet certain eligibility requirements.

12.    The Company's 2003 11-K states that effective April 1, 2003, full-time salaried

employees are eligible to participate in the Plan immediately.  Previously, employees were eligible to

participate in the Plan beginning on the first day of the second month following their date of hire,

with certain exceptions.

13.    Under the Plan, participants may elect to contribute up to 50% of their eligible

compensation to the Plan.[2]  One of the investment options available to Plan participants is the

Visteon Stock Fund.  According to the Company's Form 11-K for year ending December 30, 2001

filed with the SEC on or about June 26, 2002 ("2001 Form 11-K"), the Visteon Stock Fund is "a

unitized stock fund" with investment in Visteon common stock and "a portion of the fund's assets

invested in short-term investments."

14.    According to the Company's 2003 Form 11-K, participants are immediately vested in

their contributions and actual earnings thereon, regardless of length of service.

---

[2]    Prior to April 1, 2004 the maximum limit for employee contributions was forty percent.

15.     The Company's matches a participant's contributions at a rate of $0.60 for every dollar of participant contribution, up to 10% of a participant's base pay.  Prior to January 1, 2002, the Company's matching contributions were initially made in the Visteon stock.  Effective January 1, 2002, Visteon suspended its matching contributions.  Also effective that date, all employees became 100% vested in their Company matching contributions.

16.     Effective May 1, 2003, Visteon changed the investment options available under the Plan.  Effective December 1, 2003, over 25 investment options were now available to participants. Notably, however, the Visteon Stock Fund was still offered as an investment options under the Plan.

17.     According to the Company's Form 11-K for fiscal year ending December 30, 2002 filed with the SEC on or about June 24, 2003 ("2002 Form 11-K"), the Visteon Stock Fund was worth more than $57 million dollars at year end 2001.  By year end 2002, the Visteon Stock Fund, despite having more units invested in the Fund, was worth less than $33 million dollars.

## PARTIES

### Plaintiff

18.     Plaintiff Skiles was a Visteon employee, and is a participant in the Plan pursuant to ' 3(7) of ERISA, 29 U.S.C. § 1102(7).  Plaintiff held Visteon shares in his retirement investment portfolio during the Class Period (defined herein).

### Defendants

### Visteon

19.     Defendant Visteon is a global supplier of automotive systems, modules and components to vehicle manufacturers and the automotive aftermarket.  The Company has two

- 4 -

business segments: Automotive Operations and Glass Operations, with Automotive Operations accounting for 97% of the Company's 2003 sales.

     20.     According to the Plan's Form 5500 filed with the Department of Labor ("DOL") and the Internal Revenue Service ("IRS") for year ending December 30, 2002 (the "2002 Form 5500"). Visteon is the Plan's Sponsor within the meaning of ERISA.  Upon information and belief, Visteon exercises discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.  Further, upon information and belief, Visteon at all times acted through its Board of Directors, as well as officers and employees including its Chief Executive Officer ("CEO"), and members of any oversight and/or Plan administrative committees, appointed by the Company to perform Plan-related fiduciary functions in the course and scope of their employment.

     21.     Upon information and belief, Visteon had, at all applicable times, effective control over the activities of its directors, officers and employees, including over their Plan-related activities.  Through its Board of Directors or otherwise, Visteon had the authority and discretion to hire and terminate said officers and employees.  In addition, the Board of Directors also had the authority and discretion to appoint, monitor, and remove individual directors, officers and employees from their individual fiduciary roles with respect to the Plan.  By failing to properly discharge their fiduciary duties under ERISA, the director, officer and employee fiduciaries breached duties they owed to Plan participants and their beneficiaries.  Accordingly, the actions of the Board of Directors, the Plan's committees and/or any other employee fiduciaries are imputed to Visteon under the doctrine of *respondeat superior*, and Visteon is liable for these actions.

*Director Defendants*

22.     According to the according to the Organization and Compensation Committee ("Compensation Committee") Charter ("Charter"), the Board of Directors of Visteon determines "from time to time" who shall serve on the Compensation Committee; a sub-committee of the Board of Directors.  Further, the Board of Directors has the power to remove any member of the Compensation Committee and the Compensation Committee is required to report periodically to the Board at large regarding any "significant results" regarding its activities.

23.     Defendant Peter J. Pestillo ("Pestillo") was, at all relevant times, the Company's Chairman.  Additionally, until July 1, 2004, Defendant Pestillo was the Company's Chief Executive Officer.   Upon information and belief, Pestillo was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

24.     Defendant Michael F. Johnston ("Johnston") was, until July 1, 2004, the Company's Chief Operating Officer.  Since July 1, 2004, Defendant Johnston has served as the Company's Chief Executive Officer and President.  Importantly, Defendant Johnston has served on the Company's Board of Directors since April 2002.  Upon information and belief, Johnston was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

*Visteon Organization and Compensation Committee*

25.     Defendant Organization and Compensation Committee ("Compensation Committee") was responsible for reviewing and recommending "incentive plans, equity-based plans, and tax qualified retirement and investment plans ..." *See* Charter ¶ 4(g). Consequently, upon information

and belief, the Compensation Committee was a fiduciary of the Plan within the meaning of ERISA in that it exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

26.     Defendant Steven K. Hamp served on the Company's Board of Directors throughout the Class Period.  Further, for much of the Class Period, Defendant Hamp also served on the Compensation Committee.  Upon information and belief, Defendant Hamp was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

27.     Defendant Robert H. Jenkins ("Jenkins") was member of the Company's Board of Directors for most of the Class Period and served on the Compensation Committee during this time. Upon information and belief, Defendant Jenkins was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

28.     Defendant Charles L. Schaffer ("Schaffer") has been a member of the Company's Board of Directors since January 2001.  Further Defendant Schaffer has also served on the Compensation Committee since at least 2001.  Upon information and belief, Schaffer was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

29.     Defendant William H. Gray III ("Gray") has been a member of the Board of Directors of Visteon since June 2000.  Further, Defendant Gray, upon information and belief has served on the Compensation Committee since its inception.  Consequently, upon information and belief, Gray was

- 7 -

a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

30.     Defendant Karl Krapek ("Krapek") has served on the Company's Board of Directors since February 2003.   Further Defendant Krapek has also served as the Chairman for the Compensation Committee during a portion of the Class Period.   Upon information and belief, Krapek was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

31.     Defendant Patricia L. Higgins ("Higgins") served on the Compensation Committee during part of the Class Period and served on the Company's Board of Directors since September 2004.   Upon information and belief, Higgins was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

32.     Defendant James D. Thornton ("Thornton") was elected to the Company's Board of Directors in September 2004 and has served on the Compensation Committee during a portion of the Class Period.   Upon information and belief, Thornton was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

33.     Defendants Hamp, Jenkins, Schaffer, Gray, Krapek, Higgins and Thornton are hereafter collectively referred to as the "Compensation Committee Defendants."

34.     Defendants Pestillo, Johnston, and the Compensation Committee are hereafter collectively referred to as the "Director Defendants."

- 8 -

*Visteon Investment Plan Administrative Committee*

35.     Defendant Visteon Investment Plan Administrative Committee ("Administrative Committee") was, upon information and belief, a fiduciary of the Plan within the meaning of ERISA in that it exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.  Upon information and belief the Administrative Committee reported to the Compensation Committee.

36.     Defendant Robert H. Marcin ("Marcin") was the Chairman of the Administrative Committee and signed the Company's 2001 and 2002 Form 11-K in that capacity.  Upon information and belief, Marcin was a fiduciary of the Plan within the meaning of ERISA in that he exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

37.     Other members of the Administrative Committee are currently unknown to Plaintiff. Once their identities are ascertained through discovery, Plaintiff will seek leave to amend his Complaint to add them under their true names.

Other Defendants

38.     Defendant Barbara Quilty ("Quilty") signed the Company's Form 5500 for fiscal year 2002 as the "plan administrator."  As such, upon information and belief, Quilty was a fiduciary of the Plan within the meaning of ERISA in that she exercised discretionary authority with respect to the management and administration of the Plan and/or the management and disposition of the Plan's assets.

39.     Unknown Fiduciary Defendants 1-100 are residents of the United States and are or were fiduciaries of the Plan during the Class Period.  These Defendants, whose identities are

currently unknown to Plaintiff, may include additional Visteon employees. Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Plan at any time between September 18, 2001 and the present (the "Class Period") and whose accounts included Visteon Stock.

41.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

42.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants each owed a fiduciary duty to Plaintiff and members of the Class;

(b)     whether Defendants breached their fiduciary duties to Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

(c)     whether Defendants violated ERISA; and

(d)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

43.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages arising out of the Defendants' wrongful conduct in violation of federal law as complained of herein.

44.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

45.     Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

46.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANTS' FIDUCIARY STATUS

47.    During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to ' 3(21)(A) of ERISA, 29 U.S.C. ' 1002(21)(A), and the law interpreting that section.

48.    ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ' 402(a)(1), 29 U.S.C. ' 1102(a)(1).  Upon information and belief the Compensation Committee is a named fiduciary of the Plan.

49.    Instead of delegating all fiduciary responsibility for the Plan to external service providers, Visteon chose to internalize at least some of this fiduciary function.

50.    ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ' 402(a)(1), but also any other persons who act in fact as fiduciaries, *i.e.*, performed fiduciary functions.  Section 3(21)(A)(i) of ERISA, 29 U.S.C. '1002(21)(A)(i), provides that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management of disposition of its assets . . . ."  During the Class Period, Defendants performed fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA.

## DEFENDANTS' CONDUCT

A.    *Visteon Stock Was an Imprudent Investment*

<u>Background</u>

51.    Visteon is one of the world's largest suppliers of automotive components and systems.  In the early spring of 2000, Visteon announced that it would become an independent company following a planned spin-off from its parent, Ford Motor Company ("Ford"), later that year.  The

spin-off came less than three years after Visteon was launched as a automotive systems integrator in September 1997.

52.     At the time, according to Ford's Chairman, Bill Ford, the spin-off was "in the best long-term interest of Visteon, Ford Motor Company and Ford shareholders.  We are confident Visteon will have a successful future as an independent company.  Their core strengths, like systems integration and electronics capabilities, lie where the industry is moving."

53.     On June 28, 2000, Ford Motor Company distributed all of the common stock of Visteon Corporation owned by Ford to Ford Common and Class B shareholders of record as of the close of business on June 12, 2000.  Ford Motor Company and Visteon Corporation were now two fully independent, publicly owned companies.

54.     Within six months of the spin-off, Visteon was experiencing operational problems. On December 5, 2000, Visteon announced that Fourth Quarter earnings were anticipated to be lower than analysts' expectations and that Visteon was taking a number of aggressive actions to address the softening of U.S. industry volumes including:  a reduction in capital spending, an immediate hiring freeze, an elimination of most production overtime, and a substantial reduction in all discretionary spending.

55.     Commenting on this news, defendant Pestillo stated: "These actions can have an immediate effect on the bottom line[.]...In addition, I've asked Mike Johnston, Visteon's President, to undertake a 30-day functional review of worldwide operations with a goal of reducing structure, eliminating redundancies and streamlining processes."

Visteon's Losses Spiral Out of Control

56.     By the Fall of 2001, Visteon's initial profits disintegrated into significant losses.  For instance, the Company maintained many unprofitable product lines, such seating, glass and

- 13 -

powertrain systems, which drained resources away from the Company's "core strengths." Furthermore, Visteon was overly dependent on Ford, since 70 percent of Visteon's revenue came from Ford. As a result, the Company was exceedingly sensitive to fluctuations in Ford's production. Also, Visteon repeatedly failed to adequately control costs, as the Company was hamstrung by hefty labor cost due to its ties to the United Auto Workers ("UAW"). During this time, Defendants continued to imprudently invest Plan assets in Visteon common stock.

57.     On September 18, 2001, Visteon announced that it had revised its Third Quarter earnings estimates in light of Ford's announcement that it would take 110,000 to 120,000 units out of the Third Quarter North American production schedule. For the quarter, Visteon now expected to post an after-tax loss of $60-70 million. As the losses mounted, it became clear that the operational challenges faced by Visteon had now morphed into insurmountable obstacles.

58.     On January 18, 2002, Visteon announced fourth quarter and full year 2001 results. For the full year 2001, Visteon reported a loss of $118 million or $0.91 per share. Commenting on these results, defendant Pestillo, stated:

> 2001 was a tough year. We had solid operating performance in the First Half, but major production cuts and erratic production schedules by our largest customers led to weaker financial performance in the Second Half[.]...Restructuring and other actions taken early in the year helped offset the impact of a weaker economic environment and allowed us to maintain a solid financial position. (Emphasis added).

59.     Unfortunately for Visteon, 2002 proved to be an even tougher year. On January 23, 2003, Visteon announced fourth quarter 2002 and full year 2002 results. For the full year 2002, the company recorded a net loss of $352 million, or $2.75 per share. At this point, the severity of the Company's distress was clear and yet Defendants did nothing to protect the Plan from significant losses resulting from the Company's financial problems.

60.     In an attempt to improve its financial position, on March 5, 2003, Visteon announced that it would exit its seating business located in Chesterfield, Michigan, which   provided seating systems to Ford Motor Company.  Commenting on the news, defendant Pestillo stated that "this agreement puts us on a path to future cooperative efforts with Ford and the UAW to restructure uncompetitive businesses and grow areas of core strengths."

61.     Throughout 2003, however, Visteon's efforts to curb losses and improve profitability proved futile.  On January 23, 2004, Visteon announced fourth quarter and full year 2003 results. For the full year 2003, Visteon recorded a net loss of $1.2 billion or $9.65 per share.  Commenting on these results, defendant Pestillo stated:

> We've completed many significant actions during the course of 2003
> to improve our performance in 2004 and beyond[.]...Our agreements
> with Ford and the UAW, the exit of seating and other restructuring
> activities, combined with new business revenue, enable us to
> substantially improve our results going forward. (Emphasis added).

62.     On April 22, 2004, the Company reported first quarter 2004 net income of $30 million, or $0.23 per share.  These results were an improvement of $45 million, or $0.35 per share, compared to a net loss of $15 million, or $0.12 per share, in the first quarter 2003.  In pertinent part, the Company's press release, stated:

> "The path to profitability that Visteon has been traveling is starting to
> deliver the results we intended," said Peter J. Pestillo, Visteon's
> chairman and chief executive officer. "Our performance improvement
> reflects the actions we have taken and the hard work of our dedicated
> employees who devote each day to serving our customers with speed,
> focus and discipline. We're pleased with our new business wins. 2004
> will be the year that defines our character as a competitive, global
> Tier one supplier." (Emphasis added).

63.     On July 22, 2004, Visteon reported second quarter 2004 net income of $31 million, or $0.24 per share.  These results were an improvement of $198 million, or $1.57 per share, compared

to a net loss of $167 million, or $1.33 per share, in the second quarter 2003. Commenting on the news, defendant Johnston stated:

> We're pleased with our second quarter results, especially the continued diversification of our customer base[.]...We will be aggressive in the continuation of our cost-reduction and process improvement actions in the second half to ensure our competitive position in the marketplace.
>
> ***
>
> Visteon's net income improved compared to a year ago reflecting the impact of lower special charges, increased new business, improved operating and material efficiencies, and decreased post-retirement health and life insurance expenses, offset by customer price reductions and lower North American Ford production volumes. Net income was also impacted by debt extinguishment costs of $7 million after tax related to a portion of Visteon's public debt securities. (Emphasis added).

64.     Unfortunately for the Plan participants, by the winter of 2004, Visteon's true financial position was coming to light. On January 31, 2005, Visteon announced that for the full year 2004, Visteon recorded a net loss of $1.489 billion, or $11.88 per share.

65.     Additionally, the Company revealed that "Visteon is exploring strategic and structural changes to its business in the United States that would involve Ford and Visteon's legacy businesses. Visteon is seeking a comprehensive agreement that could address a number of items. The discussions with Ford have been constructive and are ongoing." Commenting on the news, defendant Johnston stated:

> In light of mounting challenges facing our business, we are identifying actions to improve the company's cost structure and cash position[.]...In addition to our strategic and structural discussions with Ford, we are taking actions to focus capital and engineering resources to growth areas only, and minimize the impact of material surcharges.

66.     Even more problematic than the Company's massive losses, the Company also disclosed on January 31, 2005 that during the course of its year- end closing process, "errors were

discovered in the company's accounting for certain retiree health care and pension benefits, and income taxes." (Emphasis added). The Company also announced that it was reviewing its financial results with its accounting firm to determine if "adjustments or corrections" were necessary. Due to the Company's "errors," the Company said that it would restate its financial statements for 2002, 2003 and the first three quarters of 2004.

67.     Furthermore, on February 9, 2005, Visteon announced a decision to suspend the Company's quarterly cash dividend on its common stock.

68.     On February 18, 2005, Moody's Investors Service ("Moody's") cut Visteon debt ratings deeper into junk status. Moody's cut Visteon's senior implied rating from "Ba1" to "Ba2," the second highest junk rating.

69.     The Company also announced in February 2005 that it would not pay 2004 bonuses to salaried employees due to the Company's mounting financial troubles. Despite these financial troubles, the Company stated that it would nevertheless give senior executives cash payouts. Shockingly, on March 10, 2005, the Compensation Committee announced that the Company had met long-term goals and that certain high ranking employees would receive their incentive awards.

70.     On March 16, 2005, in its annual report filed with the SEC, the Company announced that it would restate its earnings for 2001 through the first three quarters of 2004. The restatement increased the originally reported net loss per share by $0.64 for the nine months ended September 30, 2004, decreased originally reported net loss per share by $0.06 for the year ended December 31, 2003 and increased originally reported net loss per share by $0.13 for the year ended December 31, 2002. The Company also announced that an internal review of its own disclosure controls were not effective during much of the Class Period.

71.     Despite the Company's dire outlook, Defendants did nothing to protect plan participants from the mounting losses to their retirement savings accounts, which stemmed from Defendants' inability to adequately diversify the company's revenue stream, curb unnecessary costs, and liquidate unprofitable ventures.

72.     Defendants knew or should have known that the Company's precarious financial condition would, and did in fact, cause millions of dollars of participants' retirement savings to be wiped out.  For instance, at the beginning of the Class Period Visteon Stock traded at $15.10 per share.  By October of 2002, the stock was trading at a paltry $6.94 per share.  By March 23, 2005 – the most recent closing date – the stock was down to $5.91 per share and showed no signs of recovery.

**B.     *Defendants Knew or Should Have Known That Visteon Stock Was Not a Prudent Plan Investment***

73.     At all relevant times, Defendants knew or should have known that Visteon was engaged in the tenuous business schemes detailed above which made Visteon Stock an imprudent Plan investment.

74.     Visteon failed to properly take into account the numerous practices that put Visteon Stock at risk, as well as the fact that Visteon Stock was inflated in value, when determining the prudence of investing and holding Plan assets in Visteon Stock.

75.     As a result of Defendants' knowledge of and, at times, implication in creating and maintaining public misconceptions concerning the true financial health of the Company, any generalized warnings of market and diversification risks that Visteon made to Plan participants did not effectively inform Plan participants of the past, present, and future dangers of investing in Company Stock.

76.     In addition, the named and unnamed Defendants, as fiduciaries responsible for monitoring the Compensation and Administrative Committees, failed to adequately review the performance of the Committees to ensure that they were fulfilling their fiduciary duties under the Plan and ERISA.

77.     The Defendants' fiduciary delegates failed to conduct an appropriate investigation into whether Visteon Stock was a prudent investment for the Plan and, in connection therewith, failed to provide the Plan participants with information regarding Visteon's improper activities so that participants could make informed decisions regarding Visteon Stock in the Plan.

78.     An adequate investigation by the Defendants would have revealed to a reasonable fiduciary that investment by the Plan in Visteon Stock, under these circumstances, was clearly imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made different investment decisions.

79.     During the Class Period several analysts downgraded Visteon Stock. Indeed, by February 2005 at least six analysts had given the stock a "sell" rating. Moreover, by March 2004 the Company had amassed almost $1.7 billion in losses during the previous three years.

80.     Because Defendants knew or should have known that Visteon was not a prudent investment option for the Plan, they had an obligation to protect the Plan and its participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in Visteon Stock.

81.     Defendants had available to them several different options for satisfying this duty, including, but not limited to: making appropriate public disclosures as necessary; divesting the Plan of Visteon Stock; discontinuing further Plan contributions and/or investment in Visteon Stock; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and

loyally serve the participants of the Plan; and/or resigning as Plan fiduciaries to the extent that, as a result of their employment by Visteon, they could not loyally serve Plan participants in connection with the Plan's acquisition and holding of Visteon Stock.

82.     Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses as a result of Plan investment in Visteon Stock.  In fact, upon information and belief, the Defendants continued to invest and allow investment of Plan assets in Company Stock even as Visteon's improper practices came to light.

**C.     *Defendants Regularly Communicated With Participants In The Plan Concerning Visteon Stock Offered By The Plan, Yet Failed To Disclose The Imprudence Of Investment In Company Stock***

83.     Upon information and belief, the Company regularly communicated with employees, including participants in the Plan, about the performance, future financial and business prospects of the Company's common stock, one of the largest single assets in the Plan.  During the Class Period, the Company fostered a positive attitude toward the Company's stock, and/or allowed Participants in the Plan to follow their natural bias towards investment in the equities of their employer by not disclosing negative material information concerning investment in the Company's stock.  As such, participants in the Plan could not appreciate the true risks presented by investments in the Company's stock and therefore could not make informed decisions regarding their investments in the Plan.

84.     The SEC filings and related Company statements and releases issued during the Class Period were inaccurate, incomplete and materially misleading, causing Plan participants to purchase, and to hold and maintain, Plan investments in Visteon Stock.

85.     The Company, Committees and or the Plan's individual fiduciary delegates failed to provide Plan participants with complete and accurate information regarding Visteon Stock, such that

the participants could appreciate the true risks presented by investments in Visteon Stock and could make informed decisions regarding investments in the Plan.

**D.    Defendants Suffered From Conflicts of Interest**

86.    Visteon's SEC filings during the Class Period, including their Proxy Statements, make clear that a significant percentage of corporate officer compensation is in the form of stock grants or stock option grants.  Indeed, the long-term component of Visteon's incentive compensation program for officers of the Company consists of equity-based grants in the form of stock options and restricted stock.

87.    Because their compensation was so closely tied to the price of Visteon Stock, Defendants had a strong incentive to keep the Plan's assets in Visteon's Stock.  Defendants may have had no choice in tying their compensation to Visteon Stock (because compensation was determined by Visteon), but they did have the choice whether to keep the Plan participants' and beneficiaries' retirement savings tied to Visteon Stock.

88.    These conflicts of interest put the Defendants in the position of having to choose between their own interests as executives and stockholders, and the interests of the Plan participants and beneficiaries, in whose interests the Defendants were obligated to loyally serve with an "eye single."

## CLAIMS FOR RELIEF UNDER ERISA

89.    At all relevant times, Defendants were and acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

90.    ERISA § 502, 29 U.S.C. § 1132, provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

91.    ERISA § 409(a), 29 U.S.C. '1109(a), "Liability for Breach of Fiduciary Duty,"
provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any
of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally
liable to make good to such plan any losses to the plan resulting from each such breach, and to
restore to such plan any profits of such fiduciary which have been made through use of assets of the
plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may
deem appropriate, including removal of such fiduciary.

92.    ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in
pertinent part, that a fiduciary shall discharge his duties with respect to a plan *solely in the interest of*
*the participants* and beneficiaries, for the *exclusive purpose of providing benefits to participants* and
their beneficiaries, and *with the care, skill, prudence, and diligence* under the circumstances then
prevailing that a prudent man acting in a like capacity and familiar with such matters would use in
the conduct of an enterprise of a like character and with like aims.

93.    These fiduciary duties under ERISA § 404(a)(1)(A) and (B) are referred to as the
*duties of loyalty, exclusive purpose and prudence* and are the "highest known to the law." They
entail, among other things,

        a.    The duty to conduct an independent and thorough investigation into, and
               continually to monitor, the merits of all the investment alternatives of a plan,
               including in this instance Visteon Stock, to ensure that each investment is a
               suitable option for the plan;

        b.    A duty to avoid conflicts of interest and to resolve them promptly
               when they occur. A fiduciary must always administer a plan with an "eye
               single" to the interests of the participants and beneficiaries, regardless of the

- 22 -

interests of the fiduciaries themselves or the plan sponsor;

    c.    A duty to disclose and inform, which encompasses:

        (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

94.    ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that:

> "...in addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (A) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (B) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (C) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

95.    Plaintiff therefore brings this action under the authority of ERISA § 502 for Plan-wide relief pursuant to ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendants.

## CAUSATION

96.    The Plan suffered millions of dollars in losses because substantial assets of the Plan were imprudently allowed to be put at great risk by Defendants through Plan asset investment in Visteon Stock during the Class Period, in breach of Defendants' fiduciary duties.

97.    Defendants are responsible for losses caused by participant direction of investment in

Visteon Stock because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder. Defendants concealed material, non-public facts from participants, and provided misleading, inaccurate, and incomplete information to them regarding the true health and ongoing profitability of the Company, misrepresenting its soundness as an investment vehicle.   As a consequence, participants did not exercise independent control over their investments in Visteon Stock, and Defendants remain liable under ERISA for losses caused by such investment.

98.     Had the Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in Visteon Stock, eliminating Visteon Stock as an investment alternative when it became imprudent, and divesting the Plan from Visteon Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered through its continued investment in Visteon Stock.

### SECTION 404(c) DEFENSE INAPPLICABLE

99.     The Plan suffered a loss, and Plaintiff and the other Class members suffered losses, because substantial assets in the Plan were invested in Visteon Stock during the Class Period in violation of the Defendants' fiduciary duties.

100.     As to contributions invested in Company Stock, Defendants were responsible for the prudence of investments provided under the Plan during the Class Period unless participants in the Plan themselves exercised effective and informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations

promulgated under it.

101.   Those provisions were not complied with here; instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, the Defendants did exactly the opposite.  As a consequence, participants in the Plan did not have informed control over the Plan's assets that were invested in Stock, and the Defendants remained entirely responsible for ensuring that such investments were and remained prudent.

102.   Moreover, Section 404(c) does not apply to any portion of the Plan deemed an employee stock ownership plan ("ESOP") during the Class Period in that the Secretary of Labor has interpreted the provision to apply only to plans that provide Plan participants with a full range of investment options, which an ESOP by its very nature does not.  *See* 29 C.F.R. 2550.404c-1 (1996); *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997).  Nor can § 404(c) apply to any losses that result from the Company's matching contributions to an ESOP, as participants did not exercise any control over these investments for much of the Class Period.

103.   The Defendants' liability to Plaintiff for relief stemming from imprudent Plan investments in Visteon Stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period, without regard to whether or not the participants relied upon statements, acts, or omissions of Defendants.

## COUNT I:
### Failure to Prudently and Loyally Manage Plan Assets
### (Breaches of Fiduciary Duties in Violation of ERISA ' 404 Against All Defendants)

104.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

105.    At all relevant times, as alleged above, the Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

106.    As alleged above the Defendants were all responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company stock.

107.    Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. The Defendants were responsible for ensuring that all investments in Visteon Stock in the Plan were prudent, and are liable for losses incurred as a result of such investments being imprudent.

108.    Moreover, a fiduciary's duties of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan (e.g. plan trustees) to do so.

109.    The Defendants breached their duties to prudently and loyally manage the Plan's assets. During the Class Period, these Defendants knew or should have known that Visteon Stock was not a suitable and appropriate investment for the Plan as described herein. Nonetheless, during the Class Period, these fiduciaries continued to offer the Visteon Stock as an investment option for the Plan and to direct and approve the investment of Visteon Stock, instead of cash or other investments. Moreover, during the Class Period, despite their knowledge of the imprudence of the

- 26 -

investment, Defendant failed to take adequate steps to prevent the Plan, and indirectly the Plan participants and beneficiaries, from suffering losses as a result of the Plan's investment in Visteon Stock. Defendants were obliged to have in place some financial strategy to address the extreme volatility of single equity investments. All of them failed to implement any such strategy.

110. The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

111. The Defendants also breached their co-fiduciary obligations by, among other failures, knowingly participating in, or knowingly undertaking to conceal the failure to prudently and loyally manage Plan assets in exercising their discretion with respect to offering Company stock as an investment option in the Plan, despite knowing that such failure was a breach; enabling the Defendants to fail to prudently manage Plan assets in exercising discretion with respect to Plan investments, including the match as a result of their own fiduciary breaches; and by having knowledge of the failure to prudently manage the Plan assets, yet not making any effort to remedy the breach.

112. Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

113. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

114. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their

breaches of fiduciary duties alleged in this Count.

## COUNT II:
### Failure to Monitor the Compensation Committee and Administrative Committee and Provide Them with Accurate Information (Breaches of Fiduciary Duties in Violation of ERISA § 404 by Visteon and the Director Defendants)

115.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

116.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

117.    At all relevant times, as alleged above, the scope of the fiduciary responsibility of Visteon and the Director Defendants (the "Monitoring Defendants"), included the responsibility to monitor other fiduciaries.

118.    The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries the Compensation Committee and the Administrative Committee (the "Monitored Defendants").  In this case, that meant that the monitoring fiduciaries, the Monitoring Defendants, had the duty to:

> (1)    Ensure that the Monitored Defendants possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties.  They must be knowledgeable about the operations of the Plan, the goals of the Plan, and the behavior of Plan participants;

> (2)    Ensure that the Monitored Defendants are provided with adequate financial resources to do their job;

> (3)    Ensure that the Monitored Defendants have adequate information to do their

job of overseeing the Plan investments;

(4)     Ensure that the Monitored Defendants have ready access to outside, impartial advisors when needed;

(5)     Ensure that the Monitored Defendants maintain adequate records of the information on which they base their decisions and analysis with respect to Plan investment options; and

(6)     Ensure that the Monitored Defendants report regularly to the Company. The Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

119.     Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.  In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

120.     The Monitoring Defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the Monitored Defendants had access to knowledge about the Company's business problems alleged above, which made Company stock an imprudent retirement investment, and (b) failing to ensure that the Monitored Defendants appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund.

121.     The Monitoring Defendants knew or should have known that the fiduciaries they were responsible for monitoring were imprudently allowing the Plan to continue offering the Visteon Stock as a Plan investment, and continuing to invest in Visteon Stock when it no longer was prudent

- 29 -

to do so, yet failed to take action to protect the participants from the consequences of these fiduciaries' failures.

122.    In addition, as a result of its inappropriate practices and implicit knowledge thereof, the Monitoring Defendants, in connection with their monitoring and oversight duties, were required to disclose to the Monitored Defendants accurate information about the financial condition and practices of Monitoring Defendants that they knew or should have known that these Defendants needed to make sufficiently informed decisions.  By remaining silent and continuing to conceal such information from the other fiduciaries, these Defendants breached their monitoring duties under the Plan and ERISA.

123.    The Monitoring Defendants are liable as a co-fiduciaries because they knowingly participated in the fiduciary breaches by other Defendants, they enabled the breaches by these Defendants, and  had knowledge of these breaches yet did not make any effort to remedy the breaches.

124.    Defendants in this Count were unjustly enriched by the fiduciary breaches described in this Count.

125.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

126.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT III:
### Failure to Provide Complete and Accurate Information

## to Plan Participants and Beneficiaries
### (Breaches of Fiduciary Duties in Violation of ERISA " 404 and 405 of ERISA)

127.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

128.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

129.    At all relevant times, the scope of the fiduciary responsibility of the Defendants included Plan communications.

130.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the plan.  This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing inaccurate and incomplete information or concealing material information regarding Plan investment options such that participants can make informed decisions with regard to investment options available under the Plan.  This duty applies to all Plan investment options, including investment in Visteon Stock.

131.    The Defendants breached their duty to inform participants by failing to provide complete and accurate information regarding Visteon Stock, Visteon's business improprieties and dubious financial condition, and the consequent artificial inflation of the value of Visteon Stock and, generally, by conveying inaccurate information regarding the soundness of Visteon Stock and the prudence of investing retirement contributions in the stock. These failures were particularly devastating to the Plan and the participants; a substantial portion of the Plan's assets were invested in Visteon Stock during the Class Period and, thus, losses in this investment had an enormous impact

on the value of participants' retirement assets.

132.   Defendants in this Count are also liable as co-fiduciaries because they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding Visteon Stock, despite knowledge of their breaches; they enabled such conduct as a result of their own failure to satisfy their fiduciary duties; and, despite having knowledge of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, they did not make any effort to remedy the breaches.

133.   Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable Plan participant that results in harm to the participant, the participant is presumed as a matter of law to have relied upon such misrepresentations and omissions to his or her detriment.  Here, the above-described statements, acts and omissions of the Defendants in this Count constituted misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in Visteon Stock and were material to any reasonable person's decision about whether or not to invest or maintain any part of their invested Plan assets in Visteon Stock during the Class Period.  Plaintiff and the other Class members are therefore presumed to have relied to their detriment on the misleading statements, acts, and omissions of the Defendants in this Count.

134.   Plaintiff further contends that the Plan suffered a loss, and Plaintiff and the other Class members suffered losses, by the above-described conduct of the Defendants in this Count during the Class Period because that conduct fundamentally deceived Plaintiff and the other Class members about the prudence of making and maintaining investments in Visteon Stock, and that, in making and maintaining investments in Visteon Stock, Plaintiff and the other Class members relied

to their detriment upon the materially deceptive and misleading statements, acts and omissions of the Defendants in this Count.

135.   Defendants in this Count were unjustly enriched by the fiduciary breaches described in this Count.

136.   As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

137.   Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV:
### Breach of Duty to Avoid Conflicts of Interest
### (Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 of ERISA)

138.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

139.   At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

140.   ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

141.   Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent

- 33 -

judgments concerning the Plan's investment in the Visteon Stock; failing to notify appropriate federal agencies, including the United States Department of Labor, of the facts and transactions which made Visteon Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company above the interests of the participants with respect to the Plan's investment in Company Stock.

142.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's otherwise participants and beneficiaries, lost a significant portion of their retirement investment.

143.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

144.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

145.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where

alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the Plan's assets to what they would have been if the plan had been properly administered.

146.    Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses suffered by the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:


A.      A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.      A Declaration that the Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.      An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting

from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if the Defendants had fulfilled their fiduciary obligations;

      D.     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

      E.     An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

      F.     Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

      G.     An Order that Defendants allocate the Plan's recoveries to the accounts of all Participants who had any portion of their account balances invested in Visteon Stock, maintained by the Plan in proportion to the accounts' losses attributable to the decline in the price of Visteon Stock;

      H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

      I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

      J.     An Order for equitable restitution and other appropriate equitable monetary relief against the Defendants.

DATED:

                              STEPHEN F. WASINGER PLC
                              Counsel for Plaintiff

                              By: _____
                              STEPHEN WASINGER (P-25963)
                              100 Beacon Centre
                              26862 Woodward Avenue
                              Royal Oak, MI 48067
                              Telephone: (248) 414-9900

Fax: (248) 414-9906

**Of Counsel:**
SCHIFFRIN & BARROWAY, LLP
By: Joseph H. Meltzer
    Gerald D. Wells, III
    Tamara Skvirsky
    280 King of Prussia Road
    Radnor, PA 19087
    (610) 667-7706
    Attorneys for Plaintiff

March 28, 2005
KH072336.DOC

JS 44 11/99    **CIVIL COVER SHEET** COUNTY IN WHICH THIS ACTION AROSE: Wayne

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**05-71205**

## I. (a) PLAINTIFFS

TROY SKILES, on behalf of himself and all others similarly situated

(b) County of Residence of First Listed    OHIO

(C) Attorney's (Firm Name, Address, and Telephone Number)

Stephen Wasinger (P25963)
100 Beacon Centre,
26862 Woodward Avenue
Royal Oak, MI 48067      (248) 414-990

## DEFENDANTS

VISTEON CORP., PETER J. PESTILLO, MICHAEL F. JOHNSTON, ORGANIZATION AND COMPENSATION COMMITTEE, STEVEN K. HAMP, ROBERT H.

County of Residence of First Listed    Wayne

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**AVERN COHN**

**MAGISTRATE JUDGE DONALD A. SCHEER**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLA | DEF |  | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21: 881 | 28 USC 157 | ☐ 450 Commerce/ICC |
| ☐ 150 Recovery of | ☐ 320 Assault Libel | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| Overpayment and Enforcement of Judgment | And Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced & Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product Liability | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 810 Selective Service |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 850 Securities/Commodities/ |
| | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Equal Access to Justice |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multi district Litigation

☐ 7 Appeal to District Judge from Magistrate

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Complaint for violations of ERISA, including declaratory judgment and monetary remedies

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

$ DEMAND Greater than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE          DOCKET NUMBER

DATE

March 28, 2005

SIGNATURE OF ATTORNEY OF RECORD

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes

                                                                                      ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.        Other than stated above, are there any pending or previously        ☐ Yes
        discontinued or dismissed companion cases in this or any other        ☒ No
        court, including state court? (Companion cases are matters in which
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :

Additional Defendants:

JAMES D. THORNTON, VISTEON INVESTMENT PLAN ADMINISTRATIVE COMMITTEE, ROBERT
H. MARCIN, BARBRA QUILTY, and UNKNOWN DEFENDANTS 1-100,